JAMES L. GAINES, for use of State, v. J. H. GALBREATH et al.

1. BANK OF TENNESSEE. *New issue certificates.* The sureties of a party liable to the State for taxes collected by him, which liability was merged into a judgment October 4, 1884, cannot discharge the judgment in non-due certificates issued under the act of March 29, 1883, in redemption of the new issue of the Bank of Tennessee.

2. SAME. *Same. Same. What judgments may be paid.* Final judgments against delinquent collectors or their sureties "outstanding and subsisting" at the date of the act, may be paid in such certificates, not judgments subsequently recovered.

Gaines *v.* Galbreath.

3. OFFICERS, MINISTERIAL. *Powers.* Ministerial officers, authorized to issue paper binding on the people, must strictly pursue the power given them.

4. TAXES. *Revenue collector. Judgment.* Judgment against a defaulting collector of revenue and his surety, is not "back taxes" in the sense of the statute.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. FRANK T. REID, J.

T. E. MATHEWS for Gaines.

N. D. MALONE for Galbreath.

WILSON, Sp. J., delivered the opinion of the court.

This case was before this court at its December term, 1882. It was then determined that J. H. Galbreath and the sureties on a special bond executed by him to James L. Gaines, Comptroller of the State at the time the bond was executed, were liable for taxes on litigation collected by him, under an appointment as special commissioner made by Gaines, although the appointment was unauthorized by law. The case was, however, reversed and remanded to the circuit court for a new trial, because of errors in the proceedings in that court: 10 Lea, 568; *et seq.*

Thereafter, on October 4, 1883, the case was tried before a jury in the circuit court of Davidson county, and resulted in a verdict and judgment against Galbreath and his sureties for $500.54. An execution issued on this judgment, and steps under the same

were enjoined by bill in chancery filed by the sureties on the special bond which had been executed by Galbreath. The injunction issued in the case was dissolved by the chancellor and the sureties dismissed their bill.

On the first Monday in January, 1884, before an *alias* execution was issued on the judgment from the circuit court, the sureties appeared therein, paid the cost, and tendered to the clerk of the court the amount of the judgment and interest in certificates of the State of Tennessee, issued under the act of March 22, 1883, in redemption of the new or Torbett notes of the Bank of Tennessee.

The certificates tendered were not due, and the clerk refused to receive them. The sureties then entered a motion on the motion docket of the court, to be permitted to satisfy the judgment and interest in said certificates, accompanying the motion with the certificates. The clerk also entered a motion asking to be instructed as to receiving or rejecting the paper tendered.

The court heard the motions together on the 29th of March, 1884, and held that the tender was valid, and directed the judgment to be satisfied. On April 5, 1884—the court still being in session—his Honor set aside his previous judgment or order, took the motions under advisement and continued them until the next term. At this term he held that the tender was not valid, and the sureties appealed, giving bond. It appears, that notwithstanding the appeal, and the execution of the appeal bond, an execution issued on the judgment. This was, however, superseded by a

Gaines v. Galbreath.

*supersedeas* issued by direction of one of the judges of
this court upon petition, therefore we are left entirely
in the dark as to the exact nature of the decree of
the chancellor dissolving the injunction issued on the
bill filed in that court, and also as to the terms of the
decree dismissing the bill.

We may assume, however, as stated in argument
here, that the point presented by the bill was that
new issue notes of the Bank of Tennessee had been
tendered in satisfaction of the judgment, and that the
chancellor, upon motion to dissolve the preliminary
injunction, held the tender invalid. We may also as-
sume, that the sureties, upon the enactment of the act
of March 29, 1883, and the issuance of certificates
thereunder in redemption of the designated issues of
the bank, simply dismissed this bill and procured the
certificates tendered for the purpose of satisfying the
judgment with them.

Conceding that the mode of procedure adopted below
was proper for the purpose, the question raised thereby
is, can the sureties of a party liable to the State for
taxes collected by him in litigation, which liability
was merged into a judgment against them and their
principal on the 4th of October, 1884, discharge the
judgment in non-due certificates issued under the act
of March 29, 1883, in redemption of the new or
Torbett issues of the Bank of Tennessee? Its solu-
tion depends upon a proper construction of the act of
March 29, 1883, entitled "An Act to provide for the
redemption of the notes of the Bank of Tennessee,
and to protect the State therein."

The provisions of this act bearing upon the subject are a part of the first section, and all of the third section. Under the first section, the Governor, Treasurer and Comptroller are directed "to' prepare certificates of indebtedness in the amount in all of $1,000,-000, and in denominations of $1, $5 and $20, as may be found most convenient for the purpose herein expressed. They shall be engraved and printed or lithographed on suitable paper with appropriate' device, be signed by the Governor, Comptroller and Treasurer, and payable to the person to whom issued or bearer, and shall bear date the day of their issuance, and shall be payable one-fifth each year for a period of five years, and they shall show upon their face that they were issued under this act in substitution of the notes of the Bank of Tennessee, and that they are receivable for taxes and other dues to the State *as by this act provided.* They shall be numbered and shall not bear interest."

Section third is, "that said certificates of indebtedness shall be receivable at any time, before or after due, *in payment of all final judgments now outstanding and standing against defaulting or delinquent revenue collectors or their sureties,* and decrees in favor of the :State, and in payment of all back taxes which became payable before the year A. D., 1882, and also in payment of all the 'taxes, and all other dues to the State from any tax-payer, when such warrants or certificates may be due."

The decisions of this court in the cases of *Keith* v. *Clarke,* 4 Lea, 719, and 8 Lea, 703, and *Marr* v.

*State,* 10 Lea, 471, to the effect that notes of the bank issued subsequent to May 6, 1861, and not shown to have been issued in aid of the Confederate government, were receivable in payment of all taxes and debts due the State, including judgments or sums due from defaulting or delinquent revenue collectors, can afford no aid to the plaintiffs in error in this case. For, conceding that they could have satisfied the judgment against them with the issues of the bank, when they exchanged them for certificates issued under the act of the Legislature in redemption of such issues, or purchased such certificates, they took them impressed, as to the State, with the virtues and paying qualities stipulated by the act, and none others. The question, then, is, "was the judgment in this case payable in *non-due* certificates issued in lieu of the notes of the bank under the act before recited?" We think not.

The act provides, as before recited, that these certificates shall show on their face that they were issued under it, and that they were to be receivable for taxes and other dues to the State, *as by the act provided.*

The third section makes provision for their redemption. Final judgments outstanding and subsisting at the date of the act against defaulting or delinquent revenue collectors or their securities, are payable in due or non-due certificates, for the language is that such judgments "*now outstanding and subsisting, etc.*" This judgment was *not then* outstanding and subsisting; and to hold that it is payable in non-due certificates is simply to put words into the statute that are not

Gaines *v.* Galbreath.

now there, and make it express a purpose different from what the Legislature had in view. In so holding we would have the Legislature saying what it did not say, but that these certificates, whether due or not, should be receivable in payment of all final judgments that are *now* outstanding and subsisting, *or that may hereafter be obtained, against defaulting or delinquent revenue collectors or their sureties.* But it is argued, that following this clause in the section, and constituting a separate clause, are the words, "and decrees in favor of the State," and that no restriction is provided as to the time of their rendition, with respect to their payment by non-due certificates. And the argument is, that under our law, "judgments and decrees" are interconvertible terms, that, therefore, the judgment in this case is a decree, and therefore it is payable in non-due certificates, as the act does not limit the paying quality of non-due certificates, as to decrees in favor of the State, to those outstanding and subsisting at the date of its passage.

An answer to this is plain, and is furnished by the act itself. Upon the construction contended for, it does make a distinction between judgments and decrees. Another is found in the well known rules of interpretation by which we examine the common intention of the Legislature as manifest in the act and construe one clause by the others, whether they precede or follow it.

Under these, to effectuate the intent of the law, we might interpolate certain words in the clause in question, so as to have it read, for the purpose of

construction, and decrees ("*now outstanding and sub-sisting,*") in favor of the State. This is absolutely necessary, if it be held that this clause has reference at all to decrees against officers or others for taxes, in order to bring it into harmony with other parts of the section.

The obvious general intent, purpose and policy of the State in providing as it did for the redemption of the notes of the bank, by the issuance of these certificates, justify the construction here given. The State was liable to take up these notes. Holders were entitled to tender them in payment of taxes. Thus the State was in imminent danger of being deprived of current money to pay her current expenses and meet her other obligations. In this condition, the State, in effect, asks the note-holders for a delay that will enable them to redeem them in five years, and at the same time be as little embarrassed as possible in respect to its current revenues.

Our legislative history since the war informs us that the State had obtained numerous judgments against defaulting or delinquent tax collectors and their sureties, and, in many cases, was unable to collect them, or was put to great delay and expense in doing so. To these collectors and their sureties, the State, in effect, said, "get these notes or their substitutes and pay the judgments against you; you will thus relieve yourselves, and to the extent of your payment relieve the pressure upon my current revenues."

The same in substance was said to the citizens owing back-taxes, and for the same purpose. This

is the common sense of the statute, and, as we think, the manifest import of its language, when taken altogether, under the circumstances of its enactment. Another consideration militates against the construction contended for by the learned counsel for plaintiff in error. For, if his contention be correct, the statute affords an inviting opportunity to every revenue collector in the State to swindle it; for all he has to do is to collect money from the tax-payers, keep it, be sued by the State, and after judgment against him, take the money in his pocket belonging to the State, and buy certificates and with them discharge the judgment, and retain the profits of his own venality.

It would, moreover, enable the revenue collectors, in this way, to force all these notes, or their substitutes, on the State in a year or two—the very thing the State intended to provide against. Such a construction is, in our opinion, unwarranted by the terms of the act, or the policy of the State which led to its enactment.

It is further insisted that the certificates issued and tendered in this case—although not due—stipulated on their face that they shall be received by the State in discharge of judgments rendered, as this was; and that the officials of the State, empowered to carry out the provisions of the act of the Legislature, having construed the act and issued these certificates without the special limitations imposed by the act, the State is bound to receive them. We deem it unnecessary to decide whether the certificates issued and tendered in this case are in conformity to the provisions of the

act or not. For we are aware of no well considered case that sustains the position. There is a line of decisions, and doubtless, such is the weight of authority, holding that where municipalities, counties and States have invested their officials with *power* to issue bonds or negotiable obligations of defined qualities, upon the performance of designated conditions or duties of those who are to receive the obligations, and the officials invested with this power issue the bonds or obligations, they are valid in the hands of innocent holders, although the conditions upon which they were to issue the obligations had not been fulfilled before their issuance. But officials in this State, of all kinds, act under law. Their duties and powers are defined by law. No class of officials can issue nogotiable bonds or obligations binding upon their constituency, or the governments administered by them, unless authorized by law. And when legally empowered to issue obligations of a defined character, and possessing certain features, they cannot issue obligations of a different character and impressed with features and qualities different from those specified in the grant of power to them, and if they do, they are simply void. Ministerial officers, authorized to issue paper binding upon the people, must strictly pursue the power given to them. Any other rule would enable dishonest officials to bankrupt the country.

It was suggested, rather than urged, in the argument, that this judgment could be discharged in nondue certificates, under the clause of the act providing for their reception in payment of all back taxes

·which became payable before the year 1882. It needs no argument to show that a judgment against a defaulting collector of revenue and his sureties is not "back taxes," in the sense of the statute.

However hard the case may be against the sureties, the judgment below must be affirmed with costs.